## LEVINE v. SHELL EASTERN PETROLEUM PRODUCTS, Inc.

### No. 81.

Circuit Court of Appeals, Second Circuit.

Nov. 5, 1934.

James J. Mahoney, of New York City (George J. Stacy and Frederick L. Thielmann, both of New York City, of counsel), for appellant.

A. Alan Lane, of New York City (Frederick Malcolm Wolf and Alexander Wolf, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff sued for personal injuries alleged to be due to the defendant's negligence in leaving an oil truck upon Forty-Eighth Street in the city of Brooklyn. The situation was as follows: The defendant was delivering oil to an apartment on the south side of Forty-Eighth Street from one of its trucks, some twenty-six feet long. Instead of putting it alongside the kerb, the driver set it at an angle of about forty-five degrees facing eastward; the right hand rear corner was close to the kerb and the left hand forward corner about eighteen feet away from it; the carriage way was thirty feet wide. The accident happened soon after seven p. m. on the thirteenth of December; the weather was foggy and drizzling; the visibility not more than twenty-five or thirty feet. The truck was without lights, and at about seven o'clock a fire truck on its way to an alarm, moving east—Forty-Eighth Street is a one-way street—collided with its front and damaged it. Shortly thereafter the plaintiff, the manager of the apartment to which the truck was delivering the oil, learned of the collision and went out to see what had happened. The driver told him that his truck had been injured, and that he must make out a report to his employers; he asked the plaintiff to look at the damage, though for what reason did not certainly appear. The plaintiff walked along the east side of the truck and around the front, and stood examining the damaged part, when he became aware of a car ap-

proaching, which he tried to avoid by getting to the northerly sidewalk about ten feet away. He was within about two feet of the northerly kerb when the oncoming car, not seeing the truck in time, struck its forward end and caromed off against him, causing the injuries in suit. The complaint set up these facts and alleged that the plaintiff's injuries "were caused solely by reason of the carelessness * * * of the defendant * * * and without any carelessness * * * of of the plaintiff contributing thereto." This the answer denied, though it did not plead contributory negligence as a defence. At the close of the plaintiff's case the defendant moved for a dismissal because the plaintiff had "failed to show that he himself was free from contributory negligence," a motion which he repeated at the close of the evidence. The judge denied both motions, but in his charge left the question of contributory negligence to the jury, directing them (as was proper), that the burden of proof was on the defendant; at no time did the plaintiff suggest that the issue should not have been left to the jury. From the judgment on a verdict against it the defendant appealed.

We shall assume that it was negligent to leave the unlighted truck where it was after unloading, at least on such a thick night. We shall also assume, though as to this there is certainly some doubt, that the plaintiff was one of the class for whom the statutes and ordinances were made forbidding trucks to be left diagonally in a street. Section 88, New York Vehicle and Traffic Law; article 2, §§ 17 b and 17 d of the Ordinances of the City of New York. Similarly as to the absence of lights. Section 15, New York Vehicle and Traffic Law; article 3, §§ 5 B 1 and 5 B 2 of the Ordinances. Again, we dismiss all questions of "proximate cause," and assume that the way in which the accident happened was not so unexpected as to be beyond the foresight required of the driver. A car might come along and on such a night fail to see the truck, standing without lights more than halfway across the street. It might collide with the truck and whether it caught a bystander in the plaintiff's position between itself and the truck, or slid off and struck him, was a nicety on which the driver might not safely speculate. But by the same reasoning the same foresight was required of the plaintiff. Exactly as the driver should have apprehended that cars might come along and collide with the truck, so he should have apprehended that possibility. And exactly as the driver might not speculate as to whether and how a bystander might be hurt if they did collide, so the plaintiff, such a bystander, might not speculate. The care required was measured by the same standard as the liability imposed, and whatever proved the plaintiff's case, necessarily proved the defence.

The following reasoning has been suggested to support the verdict: The facts justified a finding either way as to the defendant; the case is therefore one in which the challenged conduct lies in that equivocal zone where the jury is supreme; it might say that the defendant was careless or careful, and an appellate court could not gainsay it. The same is true of the plaintiff. Thus each of the constituent findings in the verdict, though one of them must be wrong, for each party was bound to the same standard of care, is beyond our review, and if so, we must affirm the judgment. Though this may compel us to sustain a verdict not consistent with itself, verdicts need not be self-consistent. Dunn v. U. S., 284 U. S. 390, 52 S. Ct. 189, 76 L. Ed. 356, 80 A. L. R. 161; Steckler v. U. S., 7 F. (2d) 59 (C. C. A. 2). The answer to these refinements is that though a verdict upon several counts need not be self-consistent, it has never been thought that a jury was not bound to an impartial application of the same standard of conduct to both parties to one transaction. Nor would that be tolerable, for it would recognize the propriety of enforcing separate standards, when the law did not distinguish between the responsibility of the parties. Since therefore it appears inevitably that the jury committed this wrong the verdict cannot stand. The plaintiff has however suggested that, because his interest called him into the street, he was not to be judged by the same standard as the defendant. Perhaps so; if he had had such an interest to draw him there. He had none. Neither he nor his apartment house could by any possibility be liable for injury either to the fire truck or the oil truck. The driver suggested nothing of the sort; the most which the plaintiff put into his mouth was: "There may be a lot of trouble about it, and you may as well see just what it is"; he did not even ask the plaintiff to sign his report. What he did ask was not in the line of his duty to the defendant, which for that reason is not to be charged with responsibility for inviting the plaintiff to a place of danger. In so far as the plaintiff chose to comply with the request as a personal favor to the driver, there was neither duty nor interest to excuse him.

It is undoubtedly the rule in federal courts that contributory negligence is a defence to be pleaded. Miller v. Union Pac. R. Co., 290 U. S. 227, 54 S. Ct. 172, 78 L. Ed.

294

285. This, regardless of what may be the local rule, even when the case is at common law. The rule in New York, at least until recent times, was otherwise. Hackford v. N. Y. C. R. Co., 6 Lans. 381, affirmed 53 N. Y. 654; Lee v. Troy, etc., Co., 98 N. Y. 115. Cf. Sackheim v. Pigueron, 215 N. Y. 62, 74, 109 N. E. 109. But if, as here, the plaintiff unnecessarily alleges that he is free from negligence, thus tendering the issue, he brings it before the court, though the burden of proof be unchanged. Watkinds v. So. Pac. Ry. Co. (D. C.) 38 F. 711, 4 L. R. A. 239. At any rate after the trial has been conducted, and the judge has without objection charged the jury, on that assumption, it is too late to complain. Section 391, tit. 28, U. S. Code (28 USCA § 391). It may be wiser before another trial for the defendant to amend, as it should be allowed to do, but on this record the defence was available.

Judgment reversed; new trial ordered.